UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JOSEPH P. MATTESON            :
                             :
        v.                   :        C.A. No. 13-698M
                             :
CAROLYN COLVIN               :
Commissioner of the Social Security    :
Administration               :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying Social Security Disability Insurance

("SSDI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff filed his Complaint

on October 18, 2013 seeking to reverse the decision of the Commissioner.  On April 26, 2014,

Plaintiff filed a Motion for Judgment Reversing Decision.  (Document No. 11).  On July 11, 2014,

the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner.

(Document No. 14).

This matter has been referred to me for preliminary review, findings and recommended

disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the parties'

submissions and independent research, I find that there is substantial evidence in this record to

support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning

of the Act.  Consequently, I recommend that the Commissioner's Motion for an Order Affirming the

Decision of the Commissioner (Document No. 14) be GRANTED and that Plaintiff's Motion for Judgment Reversing Decision (Document No. 11) be DENIED.

## I.  PROCEDURAL HISTORY

Plaintiff filed an application for SSDI on March 16, 2007 (Tr. 96-100) alleging disability since March 28, 2005.  He subsequently amended his disability onset date to May 1, 2006.  (Tr. 1002).  The application was denied initially (Tr. 61-63) and on reconsideration.  (Tr. 53-57).  Plaintiff requested an Administrative hearing on August 22, 2008.  (Tr. 69-70).  On September 9, 2009, a hearing was held before Administrative Law Judge Gerald Resnick (the "ALJ") at which time Plaintiff, represented by counsel and accompanied by his wife, and a vocational expert ("VE") appeared and testified.  (1096-1116).  The ALJ issued an unfavorable decision to Plaintiff on September 30, 2009.  (Tr. 15-25).  The Appeals Council did not complete its review of the claim during the time allowed, therefore the ALJ's decision became final.  (Tr. 1-3).

On February 2, 2010, Plaintiff filed a Complaint in this Court (C.A. No. 10-048M) challenging the first denial of his application.  On November 15, 2010, Defendant filed a motion for a voluntary remand for further administrative proceedings.  Accordingly, on November 15, 2010, this Court issued a Judgment in favor of Plaintiff (Tr. 1084) and an order remanding Plaintiff's claim to the Appeals Council for further Agency action.  (Tr. 1085-1086, 1088-1089).  Following the issuance of the Court's Order, the Review Board issued an Order on January 13, 2011 remanding the matter. (Tr. 1091-1095).

On September 29, 2011, a hearing was held before the ALJ (Tr. 1023-1069) at which time the ME (Tr. 1027-1061) and VE (Tr. 1061-1068) testified.  On October 6, 2011, the ALJ issued a second unfavorable decision.  (Tr. 999-1022).  On October 31, 2011, Plaintiff challenged this

decision. (Tr. 1170-1186). On September 13, 2013, the Office of Disability Adjudication and Review in Virginia issued a notice rejecting Plaintiff's argument and affirming the second denial. (Tr. 994-997). Plaintiff now seeks reversal and/or remand of the second denial of his claim.

## II.    THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred by failing to find his statements concerning the severity of his symptoms to be credible, and by misapplying the standards for evaluating medical opinion evidence.

The Commissioner disputes Plaintiff's claims and asserts that the ALJ properly weighed the medical opinions in the record and properly assessed Plaintiff's credibility.

## III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs.,

829 F.2d 192, 195 (1st Cir. 1987); <u>Parker v. Bowen</u>, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. <u>Nguyen v. Chater</u>, 172 F.3d 31, 35 (1st Cir. 1999) (<u>per curiam</u>); <u>accord</u> <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. <u>Seavey v. Barnhart</u>, 276 F.3d 1, 11 (1st Cir. 2001) <u>citing</u>, <u>Mowery v. Heckler</u>, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. <u>Seavey</u>, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. <u>Id.</u>; <u>accord</u> <u>Brenem v. Harris</u>, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. <u>Freeman v. Barnhart</u>, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. <u>Diorio v. Heckler</u>, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals

Council).  After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction.  <u>Freeman</u>, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level.  <u>See</u> <u>Jackson v. Chater</u>, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  <u>Id.</u>  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  <u>Id.</u>  The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  <u>Id.</u>

## IV.     THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the

claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(c). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B. Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether

the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.       The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process.

42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c).  If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

## E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. <u>Nguyen</u>, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. <u>Heggarty</u>, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See <u>Ferguson v. Schweiker</u>, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1. Pain

"Pain can constitute a significant non-exertional impairment." <u>Nguyen</u>, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1)  The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

(2)     Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3)     Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4)     Treatment, other than medication, for relief of pain;

(5)     Functional restrictions; and

(6)     The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2.     Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

### V.     APPLICATION AND ANALYSIS

Plaintiff was forty-three years old on the date of the ALJ's decision. (Tr. 1100). Plaintiff graduated from high school, attended one year of college and attended technical school. (Tr. 1101). Plaintiff worked as a Certified Nursing Assistant from 1992 to 2005. (Tr. 1102). Plaintiff testified that he had not worked since March 2005, but received unemployment benefits (and looked for work) through May 2006. (Tr. 1101-1103). Plaintiff alleges disability due to chronic and severe low back pain. (Document No. 11-1 at p. 4).

In April 2005, Plaintiff told Dr. Doberstein, a Neurosurgeon, that he had been out of work four months due to back pain. (Tr. 417). An EMG was negative for radiculopathy and an MRI demonstrated moderate lumbar stenosis. (Tr. 418). In October 2005, he told Dr. Doberstein that physical therapy and epidural steroid injections had not relieved his symptoms. (Tr. 419). His pain level was 5-6/10, but worse with activity; he was using no pain medications. Id. He reported some numbness and tingling over the top of the right foot. Id. Neurological findings were normal. (Tr. 419-420). In November 2005, Dr. Doberstein noted that a recent MRI was "fairly benign," showing only mild to moderate spinal stenosis at L3-4 and L4-5. (Tr. 422). At this time, Dr. Doberstein cleared Plaintiff to return to work. Id.

Plaintiff underwent another MRI in August 2006. (Tr. 425). At that time it was noted that there had been no significant progression of his back problems since October 2005. Id.

In February 2007, Plaintiff told Dr. Parker, a Rheumatologist, that his baseline pain level was 5/10, escalating to 7-8/10 with activity. (Tr. 457). At that time, his wife worked and he served as a "house dad" for his two young children. Id. Findings on examination were normal. (Tr. 457-458). Dr. Parker felt that Plaintiff should be trainable to do less physically demanding work. (Tr. 458).

Plaintiff received osteopathic manipulation treatments from Dr. Milder from February through August 2007. Her notes mention that Plaintiff did activities such as stacking wood, bike riding, cleaning carpets, and yard work, albeit with an aggravation of pain complaints. (Tr. 487-500, 769). In August 2007, Plaintiff told Dr. Sutherland, an orthopedic consultative examiner, that he had injured his back at work in February 2005 and had not had any improvement since then, despite physical therapy and four epidural blocks. (Tr. 475-476). On examination, Plaintiff demonstrated a normal gait, normal ability to walk on the heels and toes, and normal trunk motion, with passive straight-leg raising negative to 80 degrees. Id. There was some right knee crepitus but no limitation of motion. Id. The left knee was normal, with intact sensation of the lower extremities and no evidence of spasm. Id. Also in August, Dr. Cronister, a state agency physician who reviewed Dr. Sutherland's report and the other evidence in the record, concluded that Plaintiff should be able to do light-work activities despite his impairments. (Tr. 479-486).

In October 2007, lumbar MRI findings indicated an annular bulge at L3-4 (with mild central stenosis), a disc protrusion at L4-5, and a small disc protrusion at L5-S1, with foraminal narrowing at all three levels. (Tr. 501).

In January 2008, Dr. Pasquarello indicated that Plaintiff reported no improvement with epidural blocks. (Tr. 732). On examination, he moved fluidly and was neurologically intact with negative straight-leg raising. Id. MR angiography in July 2008 showed no kidney abnormalities. (Tr. 792).

In October 2008, Dr. Romanello, a Nephrologist noted that Plaintiff's heavy use of ibuprofen for pain control seemed to be exacerbating his hypertension and directed him to discontinue ibuprofen use. (Tr. 770-771). Echocardiography at this time showed normal left ventricular function,

mild left ventricular diastolic dysfunction, mild left ventricular hypertrophy, mild left atrial enlargement, mild mitral regurgitation and trace tricuspid regurgitation. (Tr. 772). Plaintiff's blood pressure improved once off ibuprofen. (Tr. 775). In December 2008, Plaintiff told Dr. Romanello that his home blood pressures remained controlled, but that he still had back pain and had tried unsuccessfully to get disability benefits. (Tr. 949). Dr. Romanello cautioned Plaintiff about his recent weight gain, and urged weight loss and strongly encouraged him to quit smoking. Id.

In April 2009, Plaintiff was examined by Dr. Kornwitz for his complaint of chronic lower back pain. (Tr. 958). Dr. Kornwitz felt that Plaintiff's complaints appeared consistent with the most recent MRI findings. Id. On examination, Dr. Kornwitz noted that Plaintiff walked with a fairly normal gait, showed negative straight-leg raising and femoral stress test, and displayed full range of motion in the hip, knee and ankle. Plaintiff also exhibited normal motor strength and reflexes. Id. In May 2009, Plaintiff was seen by Dr. Brennan, an Orthopedic Surgeon. (Tr. 980). On examination, Plaintiff showed a normal gait; normal lordosis; no pain with hip, knee or ankle motion; and only minimal tenderness with no evidence of spasm. Id. Plaintiff could flex to 30 degrees and had some discomfort with hyperextension and rotation, but otherwise was neurologically intact with negative straight-leg raising. Id. Dr. Brennan indicated that the MRI showed L3-4 disc herniation on the right, which was consistent with his symptoms. Id. Plaintiff indicated that he wanted to consider surgery, as epidurals and therapy had not really helped, but Dr. Brennan did not note whether he recommended surgery. Id. In October 2009, Dr. Brennan completed a Residual Functional Capacity ("RFC") assessment in which he indicated he did not think Plaintiff could do even sedentary work on a sustained basis. (Tr. 1314). A lumbar MRI in April 2010 showed stable degenerative changes from L3-4 to L5-S1, including facet arthropathy, mild disc bulging at L3-4, (resulting in mild

stenosis), borderline spinal stenosis at L4-5 (with moderate to severe foraminal narrowing). (Tr. 1205).

Plaintiff injured his left knee when stepping off a ladder in June 2010. (Tr. 1206). In July 2010, after an MRI showed a left medial meniscus tear, Dr. Brennan performed arthroscopic repair surgery. (Tr. 1248). In August 2010, Plaintiff said he was doing fairly well overall, with just "some soreness with some activities, particularly if he is on his feet for long periods" and was doing home exercises. (Tr. 1266). On examination, Plaintiff had negative straight-leg raising and good mobility. Id. In September 2010, Plaintiff reported he was still doing well and said that his knee limited his activity level only to a mild degree. (Tr. 1267). However, later that month, Plaintiff re-injured his knee and needed to undergo repeat surgery. (Tr. 1247, 1268). Dr. Brennan noted that Plaintiff made a good recovery, and he recommended physical therapy, increased activities and decreased use of pain medication. (Tr. 1269). No mention of significant back pain was made in notes from this period of treatment by Dr. Brennan.

In September 2010, Dr. Bader, Plaintiff's Cardiologist adjusted Plaintiff's medications in order to improve control of his hypertension, cholesterol and triglycerides. (Tr. 1282). When next seen by Dr. Bader in February 2011, Plaintiff's lipid levels were under much better control, and his blood pressure was only minimally elevated. (Tr. 1283). While Dr. Bader commented on Plaintiff's episode of knee pain in these notes, he recorded no reference to ongoing back pain. (Tr. 1282-1283). In August 2010, Plaintiff was seen by Dr. Pasquarello for the first time since 2008. (Tr. 1261). Plaintiff reported continued chronic low back pain. Id. Dr. Pasquarello noted that reports of the May 2010 MRI indicated his condition remained stable. Id. On examination, Plaintiff was in no apparent distress, and he moved fluidly between standing, sitting and lying down. Id. There were no sensory

deficits, strength was 5/5 and there was no atrophy of the lower extremities. Id. There was some paravertebral fullness (left more than right) and spinal tenderness. Id.

In October 2010, Plaintiff told Dr. Jackson, a Physiatrist, that he had never looked for any lighter work since he stopped working as a CNA. (Tr. 1262). On examination, Plaintiff was in no acute distress, his strength was intact, reflexes symmetric in the lower extremities and sensation was likewise intact. (Tr. 1263). Seated straight-leg raising was negative, click test was negative for producing pain and sacroiliac maneuvers did not produce pain. Id. Plaintiff showed minimal lower lumbar tenderness and was able to heel-and-toe walk without difficulty and had good balance. Id. Dr. Jackson reviewed the most recent MRI, and diagnosed facet degenerative disease, lower back pain and spinal stenosis. Id. He opined that there were limited choices for Plaintiff – cognitive behavioral therapy (which did not interest Plaintiff), acupuncture and a home TENS unit but otherwise had nothing further to offer regarding treatment. Id.

In December 2010, Dr. Capalbo noted no musculoskeletal or neurological complaints in his review of symptoms, and no musculoskeletal findings were described in the report of the examination. (Tr. 1293-1294). Dr. Capalbo recommended looking for a chronic pain management program. (Tr. 1294). In April 2011, Plaintiff reported increased back pain and knee pain. (Tr. 1296). Plaintiff indicated he had been taking Vicodin regularly but had stopped his Neurontin, which Dr. Capalbo instructed him to resume. Id.

At Plaintiff's supplemental hearing, Dr. Fuchs, a Board-certified Orthopedic Surgeon, reviewed the evidence and testimony and responded to questions from the ALJ and Plaintiff's counsel. (Tr. 1027-1061). Dr. Fuchs testified that, based upon the objective evidence in the record, Plaintiff did not present findings of a severity to meet or equal any listed impairment particularly

under the musculoskeletal listings.  (Tr. 1029).  According to Dr. Fuchs, the most recent MRI findings had not led to any specific recommendations for surgery.  <u>Id.</u>  Dr. Fuchs noted that examinations had been persistently negative overall for neurologic deficits and that straight-leg raising had likewise been negative.  <u>Id.</u> Dr. Fuchs indicated that there was very little in the record in the way of objective medical findings on which to base limitations on Plaintiff's activities and abilities. (Tr. 1030-1031). Dr. Fuchs concurred with the RFC assessment completed by Dr. Cronister in August 2007, even given the updated record.  <u>Id.</u>  Dr. Fuchs emphasized that any diagnostic test results had to be correlated with, and correspond to, objective abnormal findings on clinical examination.  (Tr. 1034-1035).  Dr. Fuchs stated he could not use strictly subjective pain complaints and MRI abnormalities to limit a claimant's functional limitations in the absence of objective abnormal findings on examination that correlated with the MRI findings.  (Tr. 1054-1055).  For that reason, he disagreed with the October 2009 functional capacity assessment of Dr. Brennan.  (Tr. 1055-1057).  Dr. Fuchs stated that Dr. Brennan's objective findings (or lack thereof) in his examination note did not support the restrictions listed.  <u>Id.</u>

## A.    The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 5.  At Step 1, the ALJ found that Plaintiff had not engaged in any substantial gainful activity from his alleged onset date of May 1, 2006 through his date last insured, December 31, 2010.  (Tr. 1004).  At Step 2, the ALJ concluded that Plaintiff's back impairment was "severe" within the meaning of 20 C.F.R. § 404.1520(c).  <u>Id.</u> The ALJ also found that Plaintiff retained the RFC to perform a limited range of light work.  (Tr. 1005).  Although the ALJ concluded at Step 4 that Plaintiff was physically unable to return to his work as a CNA, he concluded at Step 5 that Plaintiff was not disabled because he was capable of

making a successful adjustment to other available light positions such as inspector, packager and assembler. (Tr. 1012-1013).

**B.      Plaintiff Has Shown No Error in the ALJ's Evaluation of the Medical Evidence**

After this Court's 2010 Order, the Decision Review Board remanded the case to the ALJ with instructions to reevaluate the medical evidence and Plaintiff's claims, and to obtain evidence from an ME to clarify the nature and severity of Plaintiff's impairment. (Tr. 1094-1095). In particular, the ME was tasked with assisting the ALJ "in determining whether the state agency's August 2007 assessment is consistent with subsequent medical evidence..., and whether the additional subsequent evidence warrants establishing a more restrictive [RFC] assessment." (Tr. 1095).

The remand hearing was held on September 29, 2011. Dr. Louis Fuchs, a Board Certified Orthopedic Surgeon, appeared and testified as the ME. Dr. Fuchs reviewed and opined on the entirety of the medical record including the October 9, 2009 physical capacities evaluation completed by Dr. Brennan, (Tr. 1314), thirty days after the first decision denying benefits.[1] In the evaluation, Dr. Brennan concluded that Plaintiff was significantly limited as a result of his back pain. (Tr. 1314). Dr. Fuchs reviewed the evaluation and disagreed with Dr. Brennan's opinions based on his independent review of the record. (Tr. 1056). Dr. Fuchs opined that there were not sufficient objective medical findings in the record to justify Dr. Brennan's opinion. Id.

In his RFC finding that Plaintiff could perform a limited range of light work, the ALJ relied upon the objective medical findings of a number of examining specialists and the 2007 opinion of Dr. Cronister, a consulting physician. The ALJ accorded "significant probative value" to Dr.

---

[1] Dr. Brennan's post-decision evaluation appears to have been the impetus for the voluntary remand and reconsideration of Plaintiff's claim. (See Tr. 1047). The evaluation was authored approximately five months after Dr. Brennan examined Plaintiff for a surgical consult. (Tr. 1008).

Cronister's opinion because it was consistent with the record as a whole including subsequent evidence. (Tr. 1011). The ALJ's conclusions are also directly supported by the testimony and opinions of the ME, Dr. Fuchs. Dr. Fuchs reviewed the record and testified that none of Plaintiff's treating providers have recommended surgery. (Tr. 1029). He noted that the record does not document any objective persistent neurological deficits and that it generally indicated that straight-leg raising tests were negative. Id. Dr. Fuchs reviewed Dr. Cronister's 2007 RFC assessment and expressed agreement with it based on his review of the record including subsequent medical evidence. (Tr. 1030). He also added "the multiple physical examinations that I've reviewed have generally been quite satisfactory, so based on totally objective findings in the examinations there's very little to limit this [claimant's] activities." Id.

The expert opinion of an ME such as Dr. Fuchs can constitute substantial evidence if it reflects a reasonable reading of the entirety of the relevant medical evidence. 20 C.F.R. § 404.1527(e). Even in cases where there are contrary opinions by treating sources, the ALJ may nonetheless assign greater weight to the opinion of a reviewing physician, so long as the ALJ has an adequate basis for doing so. Arroyo v. Secretary of Health & Human Servs., 932 F.2d 82, 89 (1st Cir. 1991). The ALJ did so here, and Plaintiff has shown no grounds for a finding of error in the ALJ's findings and conclusions.

Plaintiff argues that the ALJ erred by not giving controlling weight to the opinions of his treating physicians. In fact, only one treating physician, Dr. Brennan, actually provided an assessment suggesting that Plaintiff could not do any work, including the light work the ALJ found him able to do. (Tr. 1314). However, the ALJ did not err by discounting the limitations contained in Dr. Brennan's opinion based on the ME's clear and unambiguous testimony. Moreover, the ALJ

accurately noted that other treating and examining physicians placed no work restrictions on Plaintiff that ruled out his ability to do light work activities (Tr. 1007) and that Dr. Brennan did not provide any updated medical assessment after seeing Plaintiff on a number of additional occasions during 2010. (Tr. 1008).

Under the applicable regulations, the opinion of a treating physician on the ultimate legal issue of disability is not entitled to any special significance. 20 C.F.R. § 404.1527(d). Even the medical opinions of treating doctors are only entitled to controlling weight when they are both medically well supported and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c). Here, the ALJ found Dr. Brennan's more extensive limitations (from 2009) unsupported by the record and also accurately noted that, at the time the opinion was rendered, Dr. Brennan had apparently only seen Plaintiff on a single occasion. (Tr. 1008).

Plaintiff also fails to point to other medical opinions that identify disabling work limitations for him, and Plaintiff does not address the ALJ's accurate observation that Plaintiff never obtained an updated medical assessment from Dr. Brennan after he had been treated by him in 2010. In fact, as the ALJ noted, at least one examining doctor (Dr. Parker) seemed to indicate that Plaintiff had the ability to pursue other (lighter) vocational avenues, rather than seeking to return to his past work. (Tr. 458, 1007).

Plaintiff also challenges the ALJ's reliance on Dr. Cronister's 2007 functional assessment, contending that it did not take into account subsequently submitted evidence as to his condition. However, this later evidence was reviewed by Dr. Fuchs, the orthopedic ME who testified at the 2011 ALJ hearing, as required by the remand order. Plaintiff makes no argument that Dr. Fuchs lacked access to the full record or that he failed to adequately consider the medical reports that were in the

record.  Ultimately, Dr. Fuchs agreed with Dr. Cronister's 2007 assessment after having considered all the later-submitted medical evidence.  (Tr. 1030-1031).  The ALJ was entitled to rely upon this opinion.

Plaintiff argues that the ALJ disregarded clinical findings that substantiated his claims of disabling symptoms.  However, most of the clinical findings that Plaintiff relies upon were made prior to May 2006, the amended onset date.  As to the other specific findings made at various examinations, such findings were available to Dr. Fuchs and considered by him.  In particular, the record reflects that Dr. Fuchs accounted for occasional, isolated positive findings in Plaintiff's record during the relevant period.  (See Tr. 1032, 1034).  Here, the ALJ obtained testimony from a qualified ME who reviewed the record as directed on remand.  (Tr. 1095).  The ME was subject to cross-examination by Plaintiff's counsel, and the ALJ placed great weight on the ME's review of the record and opinions.  Plaintiff has shown no error in either the ME's opinions or the ALJ's reliance upon them.

### C.     Plaintiff Has Shown No Error in the ALJ's Credibility Determination

In his decision, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent" with his RFC assessment that Plaintiff could physically perform a limited range of light work.  (Tr. 1006).  Plaintiff contends that the ALJ's credibility determination is "flawed" because the medical record is consistent as to his reported pain and limitations, and his record of consulting with numerous specialists over several years to obtain relief from back pain.  (Document No. 11-1 at pp. 31-33).

In assessing Plaintiff's claims of disabling symptoms, the ALJ properly evaluated the credibility of those claims based on a detailed consideration of the record. (See Tr. 1006-1012). He appropriately took into account Plaintiff's activities due to the lack of substantiation of his symptoms by objective medical findings. (Tr. 1006). In particular, the ALJ observed that Plaintiff's activities included cooking, laundry, grocery shopping, regularly visiting his parents and reading. (Tr. 1006). The ALJ also observed that Plaintiff described himself as a "house dad" who got up early to help the children get ready for school, took them to the bus stop, made beds and picked up the house. (Tr. 1006-1007). Finally, the ALJ observed that Plaintiff reported that he did cardio exercise five days per week and physical therapy daily and exhibited no distress and a normal gait during examination. (Tr. at 1007).

Plaintiff does not dispute that he performed the activities identified by the ALJ. Rather, Plaintiff contends that the ALJ misstated his testimony by describing these activities as being performed on a "regular basis." (Document No. 11-1 at p. 22). In particular, the ALJ found that "[o]n a regular basis, [Plaintiff's] activities included cooking, laundry, shopping for groceries, visiting his parents, occasionally eating out, and reading, as well as helping the kids out with homework." (Tr. 1006). While reasonable minds could disagree as to the meaning of "a regular basis," the bottom line is that Plaintiff testified that he engaged in activities identified by the ALJ and did so on multiple or "regular" occasions. (Tr. 1104-1106). Thus, there is substantial evidence in the record to support the ALJ's finding and, pursuant to Avery, the ALJ was permitted to consider Plaintiff's daily activities in assessing the credibility of his pain complaints. See Avery, 797 F.2d at 29. Further, the ALJ did not find Plaintiff's complaints to completely lack credibility but only to the extent they are inconsistent with the ability to perform a limited range of light work. Plaintiff has shown no error.

## VI.    CONCLUSION

For the reasons discussed herein, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 14) be GRANTED and that Plaintiff's Motion for Judgment Reversing Decision (Document No. 11) be DENIED.  Further, I recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt.  <u>See</u> Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  <u>See</u> <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
September 11, 2014